J-A02005-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ESTATE OF LEON B. MEYERS, SR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: CYNTHIA S. COOGAN | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 306 WDA 2021 |

Appeal from the Order Entered December 4, 2020
In the Court of Common Pleas of Venango County Orphans' Court at
No(s):  No. 123-2015

BEFORE:   OLSON, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.:                          **FILED: JUNE 27, 2022**

Appellant, Cynthia S. Coogan, appeals from an order entered on December 4, 2020 in the Orphans' Court Division of the Court of Common Pleas of Venango County.  After careful review, we affirm.

The facts are not in dispute.  Leon B. Myers, Sr. (hereinafter Decedent) died on February 5, 2015.  Decedent was unmarried at the time of his death but resided with his paramour, Phyllis Chevalier (Chevalier).  Decedent was survived by his four children, Leon B. Myers, Jr. (Leon Jr.), Debra Parken (Parken), Douglas G. Myers (Douglas), and Appellant.

Decedent was believed to have died intestate.  Consequently, Appellant petitioned the Venango County Register of Wills for letters of administration after her siblings renounced their rights to administer Decedent's estate.  The

_____

[*] Retired Senior Judge assigned to the Superior Court.

Register of Wills issued letters of administration to Appellant on February 17, 2015.

In the late summer of 2015, Terry Coogan, Appellant's husband, recovered a document titled as Decedent's last will and testament. The document was dated February 3, 2015 and contained a signature purporting to be that of the Decedent. The will was not signed by any witnesses.

The will nominated Appellant as the executrix of Decedent's estate. At the time of Decedent's death, the estimated value of Decedent's estate was $100,000.00, including real property valued at approximately $80,000.00 and personal property valued at approximately $20,000.00. **See** Petition for Withdrawal of Letters of Administration, 8/12/15, Exhibit E. Decedent's estate included a 64-acre farm in Cherrytree Township, Venango County, Pennsylvania. The farm property consisted of a house, an equipment garage, a barn, a hay storage shed, and several outbuildings. In addition, Decedent owned several pieces of farm equipment, cattle, and hay stored for cattle feed.

The will made specific bequests of $2,000.00 each to four individuals, including Leon Jr., Parken, Douglas, and Chevalier. In addition, two individuals received bequests in the amount of $25.00 each. Lastly, Decedent's will designated Appellant as the residual beneficiary of the estate, which residue included the farm property, after the specific bequests were made.

After Decedent's will was discovered, Appellant moved to rescind the letters of administration the Register of Wills previously granted to her,

claiming that Decedent's newly-discovered will should be probated and letters testamentary issued to Appellant as executrix. This motion was granted by the trial court.

When Appellant eventually offered Decedent's will for probate, two non-subscribing witnesses, Gerald Myers and Simon Lee, swore that they were familiar with Decedent's handwriting and signature and that the signature on the will was that of the Decedent. The Register of Wills admitted the will to probate and issued letters testamentary to Appellant, who continued administration of the estate in her new role as executrix.

In September 2017, Leon Jr., Decedent's son, filed objections and a request for an accounting. Leon Jr.'s first objection asserted that Decedent's will was a forgery and subject to invalidation. By way of relief, Leon Jr. asked the court to remove Appellant as executrix and appoint him as administrator to the estate. Leon Jr.'s second objection alleged that Appellant's distribution of Decedent's 64-acre farm *via* deed on October 3, 2016 to herself and her husband, Terry Coogan, was not in the estate's best interest, constituted a violation of her fiduciary as a personal representative, and unjustly enriched her. Leon Jr. therefore asked the court to order Appellant and her husband to restore title to the farm to the estate and render an accounting of her administration to a new personal representative appointed by the court.

Appellant filed a first and partial account on September 9, 2020. Two days later, Appellant filed a motion to ascertain the ownership of several items of personal property in the possession of Leon Jr., as identified in an exhibit

attached to Appellant's first and partial account filed on September 9, 2020. Specifically, Appellant asked the trial court to consider, at the upcoming hearing, whether Decedent's estate owned the personal property listed in the September filing. On September 16, 2020, the trial court scheduled a hearing in this matter for October 8, 2020 and October 13, 2020 and agreed to address, at the hearing, both the authenticity of Decedent's will and the ownership of personal items identified in Appellant's first and partial account.

The trial court heard testimony and received evidence pertaining to these issues at the hearing convened on October 8th and October 13th. After reviewing the testimony and evidence admitted at the hearing, the court entered an order on December 4, 2020, finding that Decedent's last will and testament was forged and, hence, invalid. *See* Trial Court Order, 12/4/20, at ¶ 2. Specifically, the trial court determined that Leon Jr. sustained his burden of proving that Decedent's signature on the second page of the last will and testament (and following the dispositive provisions) was not authentic. As such, the court concluded that the will was not "signed by the testator at the end thereof" as required by 20 Pa.C.S.A. § 2502. Accordingly, the court granted the objections filed by Leon Jr., invalidated the document purporting to be the Decedent's last will and testament, vacated the orders entered by the Register of Wills that granted probate of the will and appointed Appellant as executrix of Decedent's estate, and directed Appellant to provide a full and

complete accounting to the successor administrator of Decedent's estate.[1] The court's December 4 order directed both Appellant and Leon Jr. to submit the name of either a licensed attorney or trust company willing to serve as the successor administrator of Decedent's estate.[2]  On December 29, 2020, the court appointed Tamara Ochs Rothschild, Esquire as successor administratrix to Decedent's estate.

The order of December 4, 2020 did not address the ownership of the personal property listed in Appellant's first and partial account.  After a discussion between counsel at the hearing, however, Appellant elected to forgo a judicial determination as to the ownership of all items of personal property listed in her first and partial account, except for a 275-gallon fuel tank.  **See** N.T., 10/8/20, at 123.

---

[1] In addition to requiring the preparation of an accounting for the successive administrator, the order of December 4, 2020 directed Appellant to:  (a) immediately cease expending, disbursing, or distributing any assets or funds now or formerly owned by Decedent; (b) cease encumbering, transferring, or otherwise disposing of any asset or funds now or formerly owned by Decedent; (c) return to the successor administrator of Decedent's estate any and all property, including but not limited to cash, real property, and personal property, in her possession or under her control that was formerly owned by Decedent; (d) surrender to the attorney for the Decedent's estate any and all estate bank accounts, check ledgers, and titles to real and personal property now or formerly owned by Decedent; (e) provide a full and complete accounting of her administration of Decedent's estate (as both administratrix and executrix) to the successor of Decedent's estate.  **See** Trial Court Order, 12/4/20, at ¶ 3(a)-(e).

[2] Decedent's heirs were ineligible to serve as successor administrator unless unanimously approved by all remaining heirs.  **See** Trial Court Order, 12/4/20.

Appellant filed a notice of appeal on December 23, 2020, and the trial court directed her, pursuant to Pa.R.A.P. 1925(b), to file a concise statement of errors complained of on appeal on before January 19, 2021.[3]  Appellant timely complied, raising the claims she now forwards in her brief.

Appellant's brief raises the following questions for our review.

Did the trial court err or abuse its discretion by not providing findings of fact, conclusions of law, or an opinion?

Did the trial court err or abuse its discretion by finding [Decedent's will dated February 3, 2015] to be a forgery?

Did the trial court err or abuse its discretion by not addressing the ownership of personal property set forth in Exhibit "B" of [Appellant's first and partial accounting]?

In the alternative, if the order of trial court revoking [the letters testamentary granted to Appellant] is sustained, did the court improperly include provisions in its [December 4, 2020 order] that provided for the appointment of a subsequent personal representative?

Appellant's Brief at 4.

_____

[3] Appellant was not required to file a post-trial motion to preserve appellate review of the issues she raises in this appeal.  *See* Pa.R.O.C.P. 8.1 ("no exceptions or post-trial motions may be filed to any order or decree of the [orphans'] court," except motions to reconsider final orders or interlocutory orders subject to immediate review may, but need not, be filed); *see also* Pa.R.O.C.P. 8.1, explanatory cmt. ("[Pa.R.O.C.P. Rule 8.1] clarifies that post-trial motion practice applicable in the Civil Division of the Court of Common Pleas is **not** applicable in the Orphans' Court Division") (emphasis added).

Appellant challenges an order that disposed of an objection to the validity of Decedent's will. We apply the following standard and scope of review when we review such an order.

> In a will contest, the hearing judge determines the credibility of the witnesses. The record is to be reviewed in the light most favorable to appellee, and review is to be limited to determining whether the trial court's findings of fact were based upon legally competent and sufficient evidence and whether there is an error of law or abuse of discretion. Only where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence may the court's findings be set aside.

*In re Estate of Schumacher*, 133 A.3d 45, 49-50 (Pa. Super. 2016) (citation omitted).

In her first issue, Appellant argues that the trial court erred and abused its discretion in failing to furnish findings of fact and conclusions of law in a judicial opinion that explained the court's December 4th order. Initially, Appellant declares that "no [] opinion [setting forth the trial court's rationale for its December 4, 2020, order] was filed of record or served on the parties" despite statements in the December 4th order that such an opinion had been prepared. *See* Appellant's Brief at 14-15. Building upon her factual contention that the trial court failed to file an opinion, Appellant reasons that "when the rationale for an order [challenged on appeal] does not appear of record either in an opinion, an order, the transcript of the hearing, or in [a Rule 1925(a)] opinion, [this C]ourt may remand the record to the trial court with the direction that an opinion be prepared and entered" or we may review

the record in its entirety and "decide the case without remanding for the preparation of an opinion." *Id.* at 15. Appellant "believes that the record here is adequate for [this] Court to make its own finding[s] after [independent review]" and, therefore, "Appellant [requests] that this [] Court review all of the pleadings, hearing transcripts, and evidence submitted at the hearing and make [its own] new finding [that reverses the December 4, 2020 order of the trial court."] *Id.* at 16.

Appellant's first claim merits no relief. As a preliminary matter, our review of the certified record reveals a 48-page opinion prepared by the trial judge who presided over the October 2020 hearing. In its opinion, the court carefully and thoroughly considers the evidence and testimony introduced at the hearing, together with the relevant principles of Pennsylvania law that govern a challenge alleging that a will is invalid because it has been forged. Hence, Appellant's first issue rests upon a faulty factual foundation.[4]

_____

[4] Our rejection of Appellant's claim that the absence of an explanatory opinion frees us to undertake an independent assessment of the facts finds additional support in the procedural rules that appear to govern the proceedings before the orphans' court. Pennsylvania Rule of Civil Procedure 1038 provides that, in a bench trial, "[t]he decision of the trial judge may consist only of general findings as to all parties but shall dispose of all claims for relief. The trial judge may include as part of the decision specific findings of fact and conclusions of law with appropriate discussion." Pa.R.C.P. 1038(b); *see Pace Const. Managers, Inc. v. Muncy Sch. Dist.*, 911 A.2d 585, 591 (Pa. Cmwlth. 2006); *Turney Media Fuel, Inc. v. Toll Bros.*, 725 A.2d 836, 839 (Pa. Super. 1999). Thus, the trial court was not required to make findings of fact and conclusions of law. It was only required to dispose of all claims. Here, the court invalidated Decedent's will as a forgery and vacated the order
*(Footnote Continued Next Page)*

Moreover, we conclude, after careful review of the notes of testimony from the October 2020 hearing, that competent and sufficient evidence supports the trial court's finding that Decedent's will was forged. As an error correction court, it is not our function to substitute our own determinations for the properly supported findings of the trial court. *See Owens v. Mazzei*, 847 A.2d 700, 707 (Pa. Super. 2004) ("[i]f the court's decision rests upon legally competent and sufficient evidence, we will not revisit its conclusions" and "[u]nder no circumstance will we substitute our judgment of credibility for that of the Orphans' Court"). Thus, to the extent that Appellant asks us to reassess the credibility of the testimony presented during the non-jury trial, or re-evaluate the persuasive value of the evidence admitted at that proceeding, we decline her invitation to do so.

---

that appointed Appellant to serve as the executrix of Decedent's will. As such, we conclude that the court disposed of all claims raised by the parties.

We have not been able to identify an orphans' court rule which delineates the requisite composition of a judicial decision following a non-jury trial before that division of the court of common pleas. However, while post-trial procedures applicable in the civil division do not apply in the orphans' court, *see supra*, other provisions within the orphans' court rules suggest that Pa.R.C.P. 1038(b) provides relevant guidance concerning the required content of a judicial decision emanating from the orphans' court. Many provisions of Chapter III of the Pennsylvania Rules of Orphans' Court Procedure, addressing petition practice and pleadings before the orphans' court, and Chapter VII of the Pennsylvania Rules of Orphans' Court Procedure, addressing pre-hearing and hearing procedures, are derived from or incorporate rules applicable in the civil division. We infer from this this that the court's December 4, 2020 order, standing alone, was not subject to correction simply because it lacked lengthy explication of the court's rationale.

- 9 -

In her next claim, Appellant maintains that the trial court erred and abused its discretion in determining that Leon Jr. met his high burden of demonstrating forgery by clear and convincing evidence. Appellant first points out that Decedent's will was entitled to a presumption of validity since it was properly probated. According to Appellant, the report and testimony offered by Mark Songer, Leon Jr.'s handwriting expert offered to establish forgery, were flawed since Songer did not adequately account for Decedent's medical infirmities and compared Decedent's signature to handwriting exemplars that were not all signed by Decedent. *See* Appellant's Brief at 10. Moreover, the trial court erred and abused its discretion in crediting Songer's opinion over the testimony of Appellant, Parkin, and Chevalier, who each testified that they believed the will to be authentic and that Decedent uttered comments which substantiated the distribution scheme expressed in the will. Appellant concludes that, "[t]he weight to be given to Songer's report and testimony should not have been enough to overcome the presumption that the will of [Decedent] was valid and produced [authentically]." Appellant's Brief at 33.

The form and execution of a valid will is governed by 20 Pa.C.S.A. §§ 2501 and § 2502. "Any person 18 or more years of age who is of sound mind may make a will." 20 Pa.C.S.A. § 2501 (who may make a will). "Every will shall be in writing and shall be signed by the testator at the end thereof[.]" 20 Pa.C.S.A. § 2502 (form and execution of a will).

We discern no basis upon which to conclude that the trial court erred or abused its discretion in finding that Decedent's will was a forgery and, thus, not in conformity with § 2502. In a will contest on the issue of forgery, the burden is on the contestant to prove forgery by clear, direct, precise, and convincing evidence. *See In re Kirkander*, 474 A.2d 290, 292 (Pa. Super. 1984). In this case, Leon Jr., as the contesting party, offered extensive expert testimony which suggested that the Decedent's signature on the second page of the will was not authentic. Appellant, her sister, and Decedent's paramour, who admittedly did not witness the execution of Decedent's will, testified that they believed that Decedent's signature was genuine and that the provisions of the will were consistent with Decedent's expressed testamentary intentions. The trial court carefully reviewed the competing evidence, and the relevant legal principles, in a thorough and well-reasoned opinion and credited the evidence offered by Leon Jr. over that tendered by Appellant. *See* Trial Court Opinion, 12/4/20. We conclude that the trial court's findings are supported by substantial evidence and are consistent with the relevant legal principles. Moreover, we reject Appellant's request that we re-weigh the evidence and reduce the persuasive value of Songer's expert testimony for the reasons she suggests.[5] Appellant's second claim merits no relief.

---

[5] Appellant's citations to case law suggesting that expert testimony on forgery cannot overcome direct observation of the testator signing his/her will are easily distinguished here because there were no witnesses who saw Decedent sign the challenged will.

In her third issue, Appellant observes that the trial court failed to determine the estate's ownership interest in a fuel tank alleged to be in the possession of Leon Jr. Appellant maintains that this omission was error and that the trial court should have rendered a determination as to the estate's ownership interest in this item. Echoing her opening claim, Appellant asks this Court to make an initial assessment of the pertinent evidence and render its own finding as to the estate's ownership interest in the subject property. In the alternative, Appellant suggests that we remand this matter so that the trial court can enter an appropriate order that resolves outstanding issues regarding the ownership of personal property. For the reasons addressed above, which allude to our proper function as a court engaged in the process of appellate review, we decline Appellant's request that we undertake the process of initial fact finding on a cold record. Moreover, given our observations and conclusions on Appellant's fourth claim, we hold that the trial court properly deferred issues pertaining to the estate's interest in certain personal property until the appointment of a successor administratrix.

Appellant's position in her fourth issue is that the trial court overstepped its authority in removing her as executrix and appointing a new personal representative and should, instead, have allowed the Register of Wills to process a petition requesting the issuance of letters of administration. ***See*** Appellant's Brief at 42-44.

Initially, we recall the pertinent standard of review. "The removal of [a personal representative] is a matter vested in the sound discretion of the trial court, and thus we will disturb such a determination only upon a finding of an abuse of that discretion." *In re Estate of Mumma*, 41 A.3d 41, 49 (Pa. Super. 2012). The grounds for removal of a personal representative are set forth in 20 Pa.C.S.A. § 3182. That statute permits the trial court to replace a personal representative when he or she "is wasting or mismanaging the estate, is or is likely to become insolvent, or has failed to perform any duty imposed by law," as well as "when, for any other reason, the interests of the estate are likely to be jeopardized by his continuance in office." 20 Pa.C.S.A. § 3182(1)(5). The trial court here found that Appellant was the spouse of an individual who recovered a will that designated Appellant as the executrix and residual beneficiary of Decedent's estate. Because the will was later found to be a forgery, it was invalidated and the order issuing letters testamentary to Appellant was vacated. In the trial court's view, these developments necessitated Appellant's removal as executrix.

We discern no abuse of discretion in the trial court's ruling. A personal representative of an estate owes a fiduciary duty to collect the assets of the estate and distribute them according to the law and the testator's intent. *In re Kurkowski's Estate*, 409 A.2d 357, 360–361 (Pa. 1979) ("A decedent's personal representative is under a duty to take custody of the estate and administer it in such a way as to preserve and protect the property for

- 13 -

distribution to the proper persons within a reasonable time."); *In re Wallis'*

*Estate*, 218 A.2d 732, 736 (Pa. 1966) ("primary duty" of estate's personal

representative is "to marshall the assets and to liquidate and terminate as

soon as possible"); 20 Pa.C.S.A. § 3311 ("A personal representative ... shall

take possession of ... all the real and personal estate of the decedent ...").

Additionally, an executrix has a "duty to see that her purely private interests

were not advanced at the expense of the estate." *In re Pitone's Estate*, 413

A.2d 1012, 1015 (Pa. 1980). As the spouse of the individual who recovered

the forged will, Appellant maintained an intimate relationship with the

individual who discovered the now-invalidated instrument that designated her

as the executrix and primary beneficiary of Decedent's estate. These

circumstances constitute compelling reasons to conclude that the interests of

Decedent's estate were likely to be jeopardized by Appellant's continuation in

office.[6] *See* 20 Pa.C.S.A. § 3182(1)(5).

Having concluded that the circumstances warranted Appellant's removal

as executrix, we now consider whether the court exceeded the bounds of its

authority, as Appellant suggests, or whether the court acted in compliance

with the language of 20 Pa.C.S.A. § 3183, which outlines the procedure for

and effect of removal of a personal representative. Section 3183 provides:

---

[6] Since a newly-appointed personal representative would be required to gather all estate property, we believe the trial court acted within its discretion in deferring resolution of the ownership of the fuel tank until a new representative was selected.

- 14 -

The court on its own motion may, and on the petition of any party in interest alleging adequate grounds for removal shall, order the personal representative to appear and show cause why he should not be removed, or, when necessary to protect the rights of creditors or parties in interest, may summarily remove him. Upon removal, the court may direct the grant of new letters testamentary or of administration by the register to the person entitled and may, by summary attachment of the person or other appropriate orders, provide for the security and delivery of the assets of the estate, together with all books, accounts and papers relating thereto. Any personal representative summarily removed under the provisions of this section may apply, by petition, to have the decree of removal vacated and to be reinstated, and, if the court shall vacate the decree of removal and reinstate him, it shall thereupon make any orders which may be appropriate to accomplish the reinstatement.

20 Pa.C.S.A. § 3183.

In applying § 3183, we have observed the following.

It is fundamental estate law that letters testamentary are issued when the decedent leaves a will while letters of administration are issued when the decedent dies intestate. An executor(rix) is the person named in the will to act as personal representative while an administrator(rix) is the personal representative when the decedent died intestate. Section 3183 pertains to the removal of a personal representative in general and, accordingly, to the removal of either an executor(trix) or administrator(rix). Thus, the language in that section necessarily provides that, upon removal, the court is authorized to direct the grant of letters testamentary or of administration, as the case may be.

This verbiage, however, does not provide authority for the orphans' court to disregard the strictures regarding who is entitled to serve as the personal representative of an estate. Under section 3155 of the Probate, Estates, and Fiduciaries Code, the following persons are delineated as eligible to be granted letters:

(a)   Letters testamentary.—Letters testamentary shall be granted by the register to the executor designated in the will, whether or not he has declined a trust under the will.

(b) Letters of administration.—Letters of administration shall be granted by the register, in such form as the case shall require, to one or more of those hereinafter mentioned and, except for good cause, in the following order:

(1) Those entitled to the residuary estate under the will.

(2) The surviving spouse.

(3) Those entitled under the intestate law as the register, in his discretion, shall judge will best administer the estate, giving preference, however, according to the sizes of the shares of those in this class.

(4) The principal creditors of the decedent at the time of his death.

(5) Other fit persons.

*In Re:  Est. of Andrews*, 92 A.3d 1226, 1234-1235 (Pa. Super. 2014), *citing* 20 Pa.C.S.A. § 3155.

Since Decedent's will was invalidated as a forgery, Decedent must be deemed to have died intestate, and letters of administration must issue.  Thus, the individuals eligible to serve as personal representatives are limited to those listed in § 3155(b).  Decedent died unmarried and left no valid will naming a residual beneficiary; hence, §§ 3155(b)(1) and 3155(b)(2) do not apply.  Moreover, because the record establishes that the intestate heirs had taken sides during the will contest, the court had good cause to forgo § 3155(b)(3) in the selection of a successor administrator.  Decedent's creditors are not identified in the record, so § 3155(b)(4) does not apply.  For these reasons, we conclude that the court acted within its discretion when it directed that a licensed attorney or trust company should serve as the

successor administrator pursuant to § 3155(b)(5).  The order directing the Register of Wills to appoint Attorney Rothschild as successor administratrix to Decedent's estate did not exceed the court's authority.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  6/27/2022